**RED CARDINAL FIFTEEN, INC., a Delaware Corporation, Red Cardinal Sixteen, Inc., a Delaware Corporation, Red Cardinal Seventeen, Inc., a Delaware Corporation, Plaintiffs,**

**v.**

**Richard CHANG, William W. Lange, and LFC Real Estate Marketing Services, Inc., a California Corporation, Defendants.**

Civil Action No. 3:93–906–17.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 6, 1995.

Ronald A. Hightower, Lexington, SC, Gerald Michael Finkel, Finkel, Goldberg, Sheftman & Altman, Columbia, SC, for plaintiff.

Michael Stephen Church, Turner, Padget, Graham & Laney, P.A., Columbia, SC, John Petrasich, Irvine, CA, for defendants.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This action arises out of a dispute relating to an auction sale of three parcels of property on Hilton Head Island, South Carolina. The three properties carry street addresses of 15, 16, and 17 Red Cardinal Lane, respectively. The three corporate plaintiffs to this action (collectively "Red Cardinal") are the owners of these three parcels.[1] A rather unique and expensive residence is located on the middle lot. The defendants to this action include LFC Real Estate Marketing Services, Inc. ("LFC"), the company Red Cardinal hired to promote and conduct the auction;

William F. Lange ("Lange"), LFC's sole shareholder and officer; and Richard Chang ("Chang"), the individual who entered the high bid at the auction conducted by LFC.

After a week-long jury trial, the jury awarded Red Cardinal $1.4 million in actual damages on its claim for breach of fiduciary duty and $140,000 in actual damages on its claim for breach of contract. The jury also found for Red Cardinal on the counterclaim that had been interposed by LFC to collect its commission.

The matter is now before the court upon post-trial motions filed by plaintiff and defendants LFC and Lange. In order to place these motions in context, it is necessary for the court to briefly recite some of the facts relating to the auction and the rather unique procedural history of this case.

Red Cardinal purchased the three Hilton Head properties and constructed a residence on the middle lot. The evidence at trial disclosed that nearly $6 million was spent to purchase the property and build the residence.[2] Red Cardinal then attempted to market the property by placing it with a local realty company. The estimated market value was approximately $7.3 million at that time. When local marketing efforts proved unsuccessful, Red Cardinal contracted with LFC, which agreed to conduct a promotional campaign leading to a public auction of the property. The contract required Red Cardinal to reimburse LFC the amount it spent promoting the sale (a sum which eventually amounted to $140,000.00) and to pay a commission equivalent to six percent (6%) of the sales price of the property.

When the auction was conducted, only one person bid. That individual, Richard Chang, entered the minimum bid, $4.4 million dollars. Chang refused to post the necessary bid deposit and refused to execute the sale documents immediately after the auction, indicating that he needed time to review the sales documents. Shortly thereafter, LFC, through Lange and other agents, informed

---

1. For ease of reference, the court shall refer to the collective plaintiffs in the singular as "Red Cardinal" in the remainder of this order.

2. Although defendants challenged Red Cardinal's expenditures on the house, the court, in considering defendants' post-trial motions, must view the evidence and all inferences in the light most favorable to Red Cardinal, the non-moving party.

Red Cardinal that Chang had refused to go forward with the sale, apparently because Chang felt he had entered a bid that was too high. In this and other conversations, LFC indicated that Chang was a wealthy businessman from Hong Kong who apparently was interested in a home for himself on Hilton Head Island. LFC and Lange then encouraged Red Cardinal to go forward with a sealed bid sale. In so doing, they indicated that the failure of the auction may have damaged or capped the value of the property. The property was ultimately sold for $3 million in the sealed bid sale.

Shortly after the sealed bid sale, Red Cardinal sued LFC asserting that LFC had failed to adequately represent its interests in allowing Chang to escape without posting a deposit and without consummating the sale. In the course of that litigation, LFC and Lange, through various interrogatory responses and affidavits, took the position that Chang was a wealthy businessman from Hong Kong. They contended that they did not know or have a prior relationship with Chang. In short, LFC and Lange took the position that Chang was a legitimate bidder who apparently had bid on the property in good faith and then walked away from the sale when he became concerned that he had bid too much.

That litigation ("*Red Cardinal I*") was initially assigned to the undersigned United States District Judge who presided over several discovery disputes and related procedural issues that arose in the case. Before trial, however, the case was reassigned to United States District Judge William B. Traxler, Jr., as part of an effort by the Office of the Clerk of Court to create a docket for a new member of this court. Judge Traxler calendared the case for trial, a jury was selected, and the parties settled the matter on the morning the trial was to begin. Essentially, the settlement involved a compromise of the six percent (6%) commission due to LFC. Because the final sale price was $3 million, there was a real estate commission of $180,000 in dispute. By the terms of the settlement, Red Cardinal agreed to pay LFC $110,000 of the commission and retain the rest. The parties exchanged releases and the action was dis-

missed from the court's docket. In the course of announcing the settlement to the court, LFC gave some indication of a very limited relationship with Chang but expressly denied any relationship that might contravene the contractual and fiduciary relationship between LFC and Red Cardinal. The litigation between Red Cardinal and LFC was settled based on this assurance.

Red Cardinal then turned its attentions to Chang, instituting this action ("*Red Cardinal II*") seeking the difference between the price that Chang had bid and the ultimate sealed bid price on the property. The action was based, in no small measure, upon LFC's representations in *Red Cardinal I* that Chang had made a legitimate bid on the property and then walked away without complying.

In the course of discovery of this action, Red Cardinal came into possession of information that disclosed a much more extensive relationship between LFC and Chang than had been admitted in *Red Cardinal I*. For example, it was learned that LFC had paid Chang's travel and lodging expenses to come from California to Hilton Head Island for the sealed bid sale. It was also learned that Chang had, for quite some time, worked for a company owned by Lange's father and that Lange himself had written numerous large checks to Chang purportedly in connection with his work for Lange's father's business. Most importantly, LFC and Lange provided discovery responses and affidavits in *Red Cardinal II* that were widely divergent from the position they had taken in *Red Cardinal I*.

When Red Cardinal acquired this new information, it promptly sought leave of this court to amend the complaint to add LFC back into this litigation and to assert claims against Lange as well. To do so, however, would require that the order and judgment dismissing *Red Cardinal I* be vacated. This court ruled that because Judge Traxler had jurisdiction over *Red Cardinal I,* any effort to set aside the order of dismissal and judgment in that case should be made before Judge Traxler.

*Red Cardinal I* then returned to Judge Traxler who, based upon the representations set forth above, vacated the order of dismiss-

al and the judgment. He declined, however, to set aside the settlement agreement between the parties, leaving that issue to be resolved by this court.

After Judge Traxler set aside the dismissal of *Red Cardinal I*, this court allowed LFC and Lange to be added as new defendants in this litigation and allowed Red Cardinal to essentially reassert the causes of action that had been made in *Red Cardinal I*. LFC then raised the settlement agreement and release between the parties as a defense to these claims the plaintiff had resurrected. At the same time, Red Cardinal moved the court for an order of sanctions against LFC and Lange for the contradictory positions they had taken in *Red Cardinal I* and *Red Cardinal II*.

After an extensive hearing, during which the court reviewed the procedural developments recited above in substantial detail, the court determined that LFC and Lange had, in fact, taken inconsistent positions in the two cases and had made material misrepresentations during the course of either *Red Cardinal I* or *Red Cardinal II*. The court's finding in this regard was set forth in detail in its oral order awarding sanctions on September 7 and 11, 1995. Simply stated, the court determined that in *Red Cardinal I*, LFC and Lange had told the plaintiff, and this court, that Chang, a wealthy Hong Kong businessman, was a legitimate bidder who simply suffered from "buyer's remorse" shortly after the sale and failed to follow through. This naturally led Red Cardinal to conclude that it should pursue a breach of contract claim against Chang, seeking to recover the difference between the price that Chang bid and the price that Red Cardinal ultimately obtained for the property at the sealed bid sale. Red Cardinal then sued Chang. LFC and Lange, having secured a dismissal of *Red Cardinal I* based upon the foregoing assurances, completely reversed course, suggesting in affidavits submitted in support of Chang that Chang was bidding for an undisclosed principal and submitted only a conditional bid. Lange admitted that he had not disclosed Chang's status to plaintiff at the time of the auction.

After carefully considering the matter, the court determined that sanctions were appropriate, and at the very least, the settlement agreement should be set aside so that Red Cardinal would be free to litigate anew its claims against both LFC and Lange. The court took under advisement the question of whether additional sanctions were appropriate.[3] At the close of trial, the court determined that no further sanctions were appropriate.

The case then proceeded to trial with Red Cardinal asserting a claim against Chang for breach of contract and claims against LFC and Lange for breach of contract and breach of fiduciary duty.[4] The same defense attorney represented LFC, Lange, and Chang. In his opening statement, defense counsel disclosed, for the first time, that Chang would not appear at the trial and that LFC had agreed to indemnify Chang for any judgment that might be obtained against him.

Prior to submitting the case to the jury, the court required plaintiff to elect whether to proceed against Chang for breach of contract or to proceed against LFC and Lange on the claims asserted against those defendants. When plaintiff announced that it wished to pursue the claims against LFC and Lange to judgment, the court then announced that, if the jury found for plaintiff on both theories asserted against LFC and Lange, plaintiff would be required to elect only one theory upon which to enter judgment. The jury returned a verdict in favor

---

**3.** In ordering sanctions, the court indicated that the sanctions were to be imposed against LFC and Lange alone. The court specifically found that defense counsel had not engaged in sanctionable conduct. That is to say, defense counsel simply relayed to the court, in good faith, the facts as recited by his client. Nothing in the record indicated that defense counsel was aware of the falsity of what this court has determined to be misrepresentations made to the plaintiff and to the court. The court wishes to reiterate its finding here. Indeed, defense counsel, who has appeared before this court in the past, conducted himself appropriately in all proceedings, and adhered to the high standard of conduct expected of attorneys who practice in this court.

**4.** Other claims were also asserted. All of the other claims were either dismissed by the court or voluntarily withdrawn by plaintiff.

of Red Cardinal for $140,000 on the breach of contract claim and $1.4 million on the breach of fiduciary duty claim. No punitive damages were awarded. The jury also found for Red Cardinal on LFC's counterclaim, which sought to recover the full ($180,000.00) commission due under the sales contract. Plaintiff, quite naturally, elected to enter judgment on the fiduciary duty verdict.

## DEFENDANTS' MOTIONS

### Election of Remedies

■ Defendants contend that it was error for the court to fail to require an election of remedies earlier in the litigation. As noted previously, the court required Red Cardinal to elect whether to attempt to hold Chang to his contract or to attempt to recover from LFC and Lange on the theories asserted against those defendants. The court did not require this election until all of the evidence was in. Defendants contend that these "contradictory legal theories" were confusing to the jury and the court should have required the election prior to the start of trial.

In the normal case, the court would have required an election prior to the commencement of the trial. This case, however, was far from the normal case. It was the defendants themselves who injected "contradictory legal theories" into this case by taking inconsistent positions during the history of this litigation. Moreover, Chang was somewhat equivocable regarding his relationship with LFC and Lange. As noted previously, Chang did not appear at trial. Chang's decision not to appear and LFC's agreement to indemnify Chang both came as a surprise to the court and, no doubt, to plaintiff. Plaintiff, therefore, could not be certain what the evidence at trial would show. LFC and Lange had taken contradictory positions; Chang was not at trial; and LFC and Lange were calling the shots.

In view of the inconsistent positions the defendants had taken in the past and the surprise indemnification, plaintiff could not be faulted for continuing to advance alternative theories and presenting all evidence available to the jury. Plaintiff elected its remedy prior to going to the jury and the court instructed the jury only on the causes of action relating to LFC and Lange. Accordingly, this ground of error is overruled.

### Fiduciary Duty

Defendants next contend that the question of whether Lange was a fiduciary was a jury issue and the court erred in holding Lange a fiduciary as a matter of law. The court rejects this argument as well.

The evidence of record clearly disclosed a fiduciary relationship between Red Cardinal and LFC. LFC entered into a marketing contract that created a principal/agent relationship between the parties, and LFC does not challenge, in the motion presently before the court, its status as a fiduciary.

■ As to Lange individually, the court was initially inclined to submit the question of whether he was a fiduciary to the jury. On cross examination, however, the following colloquy between plaintiff's counsel and Lange occurred:

Q. Let me ask you this: Did you, William W. Lange, owe Red Cardinal a duty of good faith in this transaction?

A. Yes.

Q. Okay. Did you, William W. Lange, owe Red Cardinal a duty of honesty and fair dealing?

A. Yes.

Q. Did you, William W. Lange, owe Red Cardinal a duty of loyalty?

A. I think all these things are true.

Lange's candid admission that he owed traditional fiduciary duties to Red Cardinal,[5] coupled with the fact that Lange was the sole

5. On redirect, defense counsel sought to cure the admissions Lange had made by questioning him as to whether he really meant that the corporation owed fiduciary duties to Red Cardinal. Lange's equivocal response to this redirect questioning did not cure the earlier admissions elicited on cross. Lange merely responded "Both contracts [were] in the name of the corporation.

And I was acting on behalf of the corporation." It is undisputed that Lange was acting for the corporation he wholly owned and directed. Lange's candid admissions on cross that he personally owed fiduciary duties to Red Cardinal was a sufficient reason to remove this issue from the jury's consideration.

actor on behalf of LFC in this litigation and that he was LFC's sole shareholder and only corporate officer, led the court to conclude as a matter of law that Lange was a fiduciary. The court finds no error in its ruling in this regard and must deny the motion for this reason.

### Remittitur

■ Finally, LFC and Lange assert that the court should remit the verdict of $1.4 million against both defendants to $110,000 (the amount of the commission the parties allowed LFC to retain as a result of the settlement in *Red Cardinal I* ). Defendants contend that plaintiff did not offer sufficient evidence on which the jury could determine that the alleged breach of fiduciary duty proximately caused any damage to plaintiff. The court respectfully disagrees. As fiduciaries, LFC and Lange owed a duty of undivided loyalty to their principal, Red Cardinal. This duty included the obligation to fairly and conscientiously promote the sale and conduct the auction. It included the duty to make good faith efforts to hold the successful purchaser to his bid, consistent with the terms and conditions of the auction announcement. Most importantly, it included the duty to provide truthful information to the principal, Red Cardinal. *See Landvest Assoc. v. Owens,* 276 S.C. 22, 274 S.E.2d 433 (1981); *Anthony v. Padmar, Inc.,* 320 S.C. 436, 465 S.E.2d 745 (1995) (describing fiduciary duties including duty of full disclosure).

Viewed in the light most favorable to the non-moving party, the evidence clearly supports the jury award in this case. There was evidence of extensive secretive dealings between LFC and Chang; there was evidence that LFC did not immediately take steps to hold Chang to his bid (which defendants maintained at trial was entered on behalf of another qualified bidder); and there was an abundance of evidence that LFC and Lange misled Red Cardinal during and after the failed auction sale and committed numerous misrepresentations to LFC, many of which were repeated to this court in *Red Cardinal I.*

Although a minor reduction is necessary, the court does not find the basic damage award to be excessive in this case. There are a number of ways the jury could have structured its fiduciary duty award. The most likely scenario, however, is as follows. The extensive prior dealings between Chang and LFC, coupled with the fact that LFC brought Chang to the sale could lead the jury to conclude that Chang was brought in as a "straw man" to pump up the bidding. The terms of the auction provided that the minimum sale price for all three lots was $4.4 million. Chang and three other bidders registered for the sale, fully aware of the minimum bid price. Chang, the straw man, then bid the minimum bid price once the bidding was open, thus scaring away the other three potential bidders. When none of the other three bidders topped Chang's minimum bid price, the auctioneer had no other choice but to strike the property down to Chang. Because Chang was LFC's straw man, LFC did not attempt to force him to go through with the sale but rather encouraged Red Cardinal to again market the property, this time on a sealed bid basis. In making this suggestion, Lange, on behalf of LFC, admitted that the aborted auction sale probably damaged, or at least capped, the market value of the property. This led to Red Cardinal's reluctant decision to accept the $3 million that was offered at the subsequent sealed bid sale.

Under the foregoing scenario, defendants clearly breached their fiduciary duty resulting in a $1.4 million loss to Red Cardinal. Had Chang not been brought in to puff up the bidding, and had Chang not made the first bid at the minimum sales price, it is reasonable to conclude that one of the three other duly registered bidders, each of whom was aware of the minimum bid price and each of whom was required by the auction terms to bring with them a cashiers check for $100,000, might have bid the minimum sales price. Actions of LFC and Chang short circuited this possibility, however, leading to a subsequent sealed bid sale at a substantial loss.

Alternatively, it is possible, as defendants claim, that Chang was a legitimate agent for an undisclosed principal. Assuming this to be true, there is ample evidence that LFC and Lange failed to take proper action to insure his bid was binding. They certainly

failed to give plaintiff adequate information on which it could have decided to abort the auction or refuse to allow a conditional bid.

In short, the evidence clearly disclosed a fiduciary relationship between Red Cardinal, LFC, and Lange. The evidence disclosed numerous breaches of fiduciary duty. Even LFC's last minute announcement that it was indemnifying Red Cardinal's adversary, Richard Chang itself suggests a relationship with Chang that would have violated its fiduciary relationship with Red Cardinal.

A classic statement of the fiduciary duties of joint adventurers was enunciated by Justice Cardozo in *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 547 (1928);

> Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to some thing stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity· has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions.... Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Id.* 164 N.E. at 547 (citations omitted). Here, the evidence clearly disclosed that LFC and Lange, charged by the law with "undivided loyalty" to their client, Red Cardinal, breached their fiduciary duties in several respects. In short, the court is not persuaded by defendants' argument that the evidence does not support the basic damage award in this case, although the court does

believe the award must be reduced as set forth below.[6]

After carefully considering the full record, the court has determined that the damage award must be adjusted to account for the commission called for in the contract. As noted above, in awarding $1.4 million in damages, the jury obviously adopted the argument that some breach by defendants caused either Chang's $4.4 million bid not to be binding or some other bidder not to bid the same minimum amount. Either way, plaintiff would not have received a net $4.4 million. Rather, it would have paid a six percent (6%) commission on the entire amount: $264,000. The award of $1.4 million must, therefore, be reduced by $264,000 with one further adjustment. That is, the court must address the parties' previous settlement relating to $180,000 of this "commission" amount. In the prior settlement, the parties agreed that plaintiff would retain $70,000 and defendant LFC would receive $110,000 of the commission on the ultimate $3 million sale. Because defendant LFC has already received this $110,000, the court will reduce the jury award only by $154,000 to $1,246,000.

Ordinarily, when a verdict is found excessive in any respect, the court may not arbitrarily reduce the award, for to do so would deprive the parties of their constitutional right to a jury. In such situations, the traditional remedy is either a new trial on damages or a new trial *nisi remittitur,* a procedure whereby the court denies a motion for a new trial conditioned on the plaintiff remitting the verdict to a stated amount. In rare cases, however, when it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may reduce the verdict without ordering a new trial. *See* Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure,* § 2815 at 159 (1995). This is one of those rare cases. Accordingly, the court will re-

---

**6.** The award on the breach of contract claim is more problematic. The amount awarded ($140,-000.00) appears to be the exact amount that Red Cardinal paid to LFC to reimburse it for advertising expenses associated with the sale. Because the plaintiff elected to enter judgment on the fiduciary duty claim, however, it is not necessary for the court to examine the propriety of the breach of contract damage award.

duce the verdict by $154,000 for the reasons stated above.[7]

### Plaintiff's Motion

■ Plaintiff contends that it is entitled to prejudgment interest on the amount awarded by the jury. The law allows prejudgment interest on obligations to pay money from the time when, either by agreement or by operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty, even if the parties do not agree on the amount of the obligation. *Brooklyn Bridge, Inc. v. South Carolina Insurance Co.*, 309 S.C. 141, 420 S.E.2d 511, 513 (App.1992). The court does not agree with the plaintiff that the amount due in this case was liquidated. As noted above, this case proceeded to trial on a variety of legal theories and the calculation of damages was uncertain. On these facts, the court is reluctant to conclude that the amount in dispute here was either a sum certain or capable of being reduced to certainty. Accordingly, the court will deny the motion for prejudgment interest.

### Conclusion

For the foregoing reasons, the court will reduce the $1.4 million verdict returned by the jury in this case. The clerk is therefore authorized to enter judgment in favor of the plaintiff, on its fiduciary duty claim, in the amount of $1,246,000. The clerk shall also enter judgment in favor of the plaintiff on the counterclaim.

IT IS SO ORDERED.

---

**7.** Because the court has dealt with the commission issue as a reduction in the damage award, it need not further address the jury's verdict on the defendants' counterclaim.